Carly M. Roman (SBN No. 040895)
**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **Julie Guiterrez**, Individually and on Behalf of a Class of all Persons and Entities Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**Quinstreet Inc**.,<br><br>Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

## **PRELIMINARY STATEMENT**

1.  Telemarketing calls are intrusive. "A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights,

1

public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…[P]rivate suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer,* 925 F.3d at 649-50 (4th Cir. 2019).

3. Plaintiff Julie Guiterrez ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendant violated the TCPA by calling her and others who had previously asked to no longer receive calls. Such calls were made without the call recipient's prior express written consent.

4. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

5. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure

## PARTIES

6. Plaintiff is an individual residing in Arizona.

7. Defendant is an online marketing company headquartered in Foster City, San Mateo County, California.

## JURISDICTION & VENUE

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. This Court has personal jurisdiction over Defendant because it directed telemarketing calls to Arizona which establishes sufficient minimum contacts for claims arising from those telemarketing calls.  As explained herein, Plaintiff received telephone solicitations to her telephone with an area code "520" which is associated with Arizona.[1] Thus, Defendant knew, or should have known, that it was directing telephone solicitations into Arizona.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## TCPA BACKGROUND

11. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

12. Relevantly, the TCPA provides private rights of action for three types of telemarketing-related conduct.

13. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that

---

[1] *North American Area Codes*, AT&T (Oct. 2017) https://www.att.com/ecms/dam/att/smb/help/pdf/Area-Codes-N-America-by-State.pdf.

the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

15. Pursuant to this statutory mandate, the FCC ordered that telemarketers maintain procedures for honoring do-not-call requests, including a written policy and training, with violations actionable if two or more telephone solicitations are made after a request to stop.

## FACTUAL ALLEGATIONS

16. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

17. Plaintiff's telephone number is (520) XXX-XXXX.

18. Plaintiff uses this telephone number for personal, residential and household purposes.

19. Plaintiff has never been a customer of Defendant.

20. Plaintiff provided her phone number to Defendant in August 2025.

21. Plaintiff then received a call from Defendant and sometime in August told them not to call her.

22. Despite Plaintiff's request, Plaintiff began receiving frequent calls from Defendant.

23. All of the calls were from caller ID (520) 200-8248 and (520) 200-7724. Upon dialing the first number, the caller will receive a busy signal. Upon dialing the second number, the following prerecorded message is played: "Thank you for calling Modernize Home Services…"

24. Modernize was acquired by Defendant QuinStreet in 2020. Upon acquiring Modernize, QuinStreet announced that Modernize "serve as QuinStreet's flagship brand in home services going forward, advancing its mission to set the standard for transparency and trust in the home improvement and home services selection process, enabling millions of homeowners to make good and confident decisions."[2]

---

[2] QuinStreet, Inc. Press Release: *QuinStreet, Inc. Acquires Modernize to Establish Leading Home Improvement Marketplace* (July 14, 2020) at https://investor.quinstreet.com/news-releases/news-release-details/quinstreet-inc-acquires-modernize-establish-leading-home?utm_source=chatgpt.com

4

25. Additionally, Defendant acknowledged that "Modernize Home Services facilitates communication between the homeowner and home service provider, soliciting feedback from both parties throughout the project lifecycle to ensure an efficient and transparent process."[3]

26. Simply Defendant sells leads and marketing services to connect contractors with homeowners.

27. From September 22 to September 23, 2025, Plaintiff received at least five calls from Defendant.

28. On the fifth call, Defendant identified itself as calling from Modernize.

29. Plaintiff requested again that Defendant not call her.

30. Despite this request, Defendant called Plaintiff at least 22 more times from September 23 to October 6, 2025.

31. During a call on October 6, Defendant again identified itself as calling from Modernize and Plaintiff made her third do not call request.

32. Defendant ignored Plaintiff's request and called Plaintiff at least 19 more times from October 6 to October 28, 2025.

33. During a call on October 28, Defendant again identified itself as calling from Modernize and Plaintiff requested for the fourth time that Defendant not call her.

34. As expected, Defendant called Plaintiff again on October 29, 2025.

35. Plaintiff then texted Defendant and stated, "Didn't I tell you guys to quit calling me you still are I must get 20 calls a day from you sometimes at 6 in the morning."

36. Defendant ignored Plaintiff's text message and called Plaintiff at least four more times from October 29 to November 3, 2025.

37. The calls were made to promote Defendant's home-services marketplace business.

38. Plaintiff never asked for these calls.

39. Plaintiff never did any business with the Defendant.

40. Plaintiff's privacy has been violated by the above-described telemarketing calls.

41. The calls were all unwanted, nonconsensual encounters.

---

[3] *Id.*

42. Worse, Defendant appears to have either spoofed each of the numbers above to numbers that are not assigned or to numbers that are assigned to innocent third parties, as will be revealed through discovery, to further hide their location and the illegal nature of the calls.

43. The first number listed above does not permit a caller to call the number and lodge a do not call request during regular business hours. Nor will anybody texting or calling that number receive an alternate number to call to lodge a Do Not Call request during regular business hours.

44. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

45. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

46. Plaintiff brings this action on behalf of herself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

47. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **Internal DNC Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf class of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

48. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the Class members.

49. Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of

6

their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

50. Members of the Class as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

51. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

52. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

53. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

54. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

55. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including, but not limited to, the following:

    a. Whether Defendant honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

    b. whether the telemarketing calls at issue were made to Plaintiff and members of the Class without first obtaining prior express written consent to make the call;

    c. whether Defendant's conduct constitutes violations of the TCPA; and

    d. whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

56. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

57. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

58. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

59. Excluded from the Class are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

60. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Internal DNC Class)**

61. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

62. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate…any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making…calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in…any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests*. If a person or entity making…any call for telemarketing purposes (or on whose

behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.

63. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

64. Plaintiff and the Internal Do-Not-Call Class Members made requests to Defendant not to receive telemarketing calls from Defendant.

65. Defendant failed to honor Plaintiff's and the Internal Do-Not-Call Class Members' opt-out requests and instead continued to call Plaintiff and the Internal Do-Not-Call Class Members to harass them into making purchases from Defendant.

66. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to (1) institute procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) implement a written policy, available upon demand, for maintaining a do-not-call list; and (3) train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

67. Plaintiff and the Internal Do-Not-Call Class Members are informed and believe that Defendant (1) has not instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) has not implemented a

written policy, available upon demand, for maintaining a do-not-call list; and (3) does not train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

68. The details and specific facts regarding Defendant's failure to maintain the required policies, implement the required procedures, and train its personnel regarding the same, are solely within Defendant's knowledge and possession.

69. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations, except for emergency purposes, to the Plaintiff and the Internal Do-Not-Call Class despite having asked Defendant to cease its telephonic solicitations.

70. Defendant violated the TCPA willfully or knowingly.

71. Plaintiff and Internal Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

72. Plaintiff and Internal Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Internal Do-Not-Call Class Members.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the Class as alleged herein;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned as counsel for the Class;

D. Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

E. Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendant from making calls to those who have asked them to stop;

F. Attorneys' fees and costs, as permitted by law; and

G. Such other or further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

RESPECTFULLY SUBMITTED AND DATED this 19th day of December, 2025.

*/s/ Carly M. Roman*
Carly M. Roman (SBN No. 040895)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

Anthony Paronich
(*pro hac vice anticipated*)
**PARONICH LAW PC**
350 Lincoln St. Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff*